**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**William STURGILL,**
**Defendant-Appellant.**

No. 77–5021.

United States Court of Appeals,
Sixth Circuit.

Argued June 20, 1977.

Decided Oct. 6, 1977.

Kenneth L. Sales, Segal, Isenberg, Sales, Stewart & Nutt, Louisville, Ky., for defendant-appellant.

George J. Long, U. S. Atty., James H. Barr, Louisville, Ky., for plaintiff-appellee.

Before PHILLIPS, Chief Judge and WEICK and ENGEL, Circuit Judges.

ENGEL, Circuit Judge.

This appeal arises from three misdemeanor convictions in the district court under the Assimilative Crimes Act of 1948, 18 U.S.C. § 13,[1] and concerned a June 10, 1976 altercation at the United States Naval Ordnance Station in Louisville, Kentucky, between defendant Sturgill, a machinist at the station, and Joseph Frank Scott, a security guard at the station. No good purpose is served by reciting in detail the hotly disputed facts of the incident. It suffices to say that a complaint was filed with the United States Magistrate on June 24, 1976, charging Sturgill with violations of the following Kentucky statutes, pursuant to 18 U.S.C. § 13: 1) menacing, Ky.Rev.Stat.Ann. § 508.-050 (Baldwin); 2) resisting an order to stop a motor vehicle, Ky.Rev.Stat.Ann. § 520.100 (Baldwin); 3) disorderly conduct, Ky.Rev. Stat.Ann. § 525.060 (Baldwin); 4) failing to obey a stop sign, Ky.Rev.Stat.Ann. § 189.-231 (Baldwin).

On July 8, 1976, Sturgill appeared before the magistrate, entered a plea of not guilty to the charges in the complaint, and refused to waive his right to be tried by a judge of the district court and any right he might possess to a jury trial.

On August 16, 1976, Sturgill was arraigned before the district court on an information charging him with the four violations contained in the complaint and with two additional counts of harassment, Ky. Rev.Stat.Ann. § 525.070(1)(a), .070(1)(b) (Baldwin).

---

1. 18 U.S.C. § 13 provides:

Whoever within or upon any of the places now existing or hereafter reserved or acquired as provided in section 7 of this title, is guilty of any act or omission which, although not made punishable by any enactment of Congress, would be punishable if committed or omitted within the jurisdiction of the State, Territory, Possession, or District in which such place is situated, by the laws thereof in force at the time of such act or omission, shall be guilty of a like offense and subject to a like punishment.

The case went to trial on October 8, 1976 without a jury. On motion of the defendant, the court dismissed one count of harassment, and it entered a nolle prosequi by the government as to the count alleging a failure to obey an order to stop a motor vehicle. The court found Sturgill guilty of harassment, disorderly conduct, and failing to obey a stop sign, and not guilty of menacing. A $100 fine was imposed for each of the three convictions.

On appeal Sturgill claims that his due process rights under the Fifth Amendment were violated by the appearance of prosecutorial vindictiveness in adding the two counts of harassment after he refused to waive his right to be tried by the district judge and any right to a jury trial. He relies on *Blackledge v. Perry,* 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1964); *Hayes v. Cowan,* 547 F.2d 42 (6th Cir. 1976), *cert. granted sub nom., Bordenkircher v. Hayes,* 431 U.S. 953, 97 S.Ct. 2672, 53 L.Ed.2d 269 (1977), and *United States v. Ruesga-Martinez,* 534 F.2d 1367 (9th Cir. 1976).

In *Blackledge,* a defendant in a misdemeanor prosecution asserted his right to a trial *de novo* under North Carolina's two-tiered system of criminal justice after his conviction and sentencing in an inferior court. Before the new trial, the prosecutor obtained a felony indictment against the defendant for the same acts for which he had previously been charged with a misdemeanor. Following conviction the net result was an increase of eleven months in his sentence. The Supreme Court held that it was constitutionally impermissible for the prosecution to bring more serious charges against the defendant after he had exercised his statutory right to appeal, unless a neutral explanation appeared on the record. An actual retaliatory motivation need not be proved, as the Court adopted a prophy-lactic rule to ensure that even a fear of vindictiveness would not deter a defendant from exercising a statutory or constitutional right.

While a magistrate may have jurisdiction to try persons accused of a minor offense, any such defendant has the statutory right to elect to be tried before a judge of the district court. 18 U.S.C. § 3401(b). If Sturgill had waived this right, he would have been tried by the magistrate on only the four counts in the complaint, which would have functioned as the government's pleading. Rules 2(a), 3(a), Federal Rules of Procedure for the Trial of Minor Offenses Before United States Magistrates; 8 Moore's Federal Practice ¶ 3.02[1] at 3–2 n. 3 (2d ed. 1976). Therefore, he argues that the prosecutor improperly penalized him for exercising his statutory right by adding the additional counts. However, it appears that Sturgill was not in fact subjected to a "significantly increased potential period of incarceration", *Blackledge, supra,* 417 U.S. at 28, 94 S.Ct. at 2103. While the two counts of harassment were added to the information, the government filed prior to trial a notice of intent to nolle pros the count with the longest potential period of confinement.[2] Thus Sturgill was not forced to stand trial on more severe charges than were contained in the complaint, and the *Blackledge* rule is not applicable. *Compare Hayes v. Cowan, supra,* (5 years of imprisonment for felony of forgery of a check versus mandatory life sentence for an habitual criminal offender in an amended indictment); *United States v. Ruesga-Martinez, supra,* (six months maximum imprisonment for misdemeanor versus two felonies in a later information, one of which provided for a two year maximum sentence).[3]

2. The additional counts of harassment are defined as "violations" under the Kentucky statute and are punishable only by fine, the maximum being $250. Ky.Rev.Code Ann. §§ 525.070(2), 534.040(2)(c) (Baldwin). On the other hand, the nolle prossed count of resisting an order to stop a motor vehicle is a class A misdemeanor and punishable by a maximum 12 month sentence and/or a maximum $500 fine.

Ky.Rev.Code Ann. §§ 520.100(3), 532.090(1), 534.040(2)(a) (Baldwin). Thus at trial Sturgill was subjected to charges carrying the same potential fine and a shorter potential period of incarceration.

3. The original complaint was signed by a supervisory security assistant at the Naval Ordnance Station. The government indicates that this

The defendant also claims that his conviction on the one count of harassment cannot stand because the Kentucky statute is overbroad and hence violates the First Amendment. Ky.Rev.Stat.Ann. § 525.070(1)(b) (Baldwin) states:

A person is guilty of harassment when with intent to harass, annoy or alarm another person he:

.    .    .    .    .

(b) in a public place, makes an offensively coarse utterance, gesture or display, or addresses abusive language to any person present   .    .    ..

The judgment stated that Sturgill had uttered abusive language in violation of this section.

■ *Chaplinsky v. New Hampshire,* 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942), held that certain classes of speech are not protected by the First Amendment, including insulting or "fighting" words which tend to incite an immediate breach of the peace. While we have no difficulty in holding that the language of Mr. Sturgill may well be fighting words within the meaning of *Chaplinsky,* the inquiry does not end there.[4] Regardless of the precise language involved here, the statute in part punishes only spoken words and can withstand an attack upon its facial constitutionality only if, as authoritatively construed by the state courts, it is not susceptible of application to speech protected by the First Amendment.

*Gooding v. Wilson,* 405 U.S. 518, 522, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972).

■ We are unable to distinguish in any material way the language here from the language of the Georgia statute found unconstitutional in *Gooding v. Wilson.* Likewise, we find no authoritative decision of the Kentucky courts which has narrowed the broad language of the statute. Therefore, the statute must fail as a vehicle for prosecution in federal courts under the Federal Assimilative Crimes Act.

Also we note that an almost identical provision of the Texas penal code was recently stricken by the United States Supreme Court in a summary per curiam order citing the *Gooding v. Wilson* analysis. *Acker v. Texas,* 430 U.S. 962, 97 S.Ct. 1639, 52 L.Ed.2d 353 (1977). For these reasons, defendant's conviction for harassment must be reversed.

The defendant has raised numerous additional claims. He argues that his conviction for failing to obey a stop sign is invalid because the Kentucky Commissioner of Highways did not install or maintain the stop sign in question.[5] He further claims that there was insufficient evidence to support his convictions on the stop sign and disorderly conduct counts. Finally he contends that the disorderly conduct conviction must be reversed because the district court implicitly must have defined the statute to

individual received legal assistance solely from another source in filing the complaint. On the other hand, the defendant contends that the government rendered assistance to the complainant. The record contains no evidence to resolve this dispute. However, if the government is correct, we think that additional charges in the information would probably be justified, even if the potential sentence was significantly increased. To hold otherwise would unduly restrict the prosecuting attorney from making an independent examination of the criminal conduct and substituting his formulation of the appropriate charges in place of the lay person's. In such a situation it does not appear that there is a "realistic likelihood of vindictiveness." *See Chaffin v. Stynchcombe,* 412 U.S. 17, 93 S.Ct. 1977, 36 L.Ed.2d 714 (1973); *Colten v. Kentucky,* 407 U.S. 104, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972).

**4.** For example, there was evidence in the record that Sturgill said to the security guard, "[G]et your damn ass out of the way before I run through you and that damn sign  .    .    .   Fuck you; I'm not giving you anything  .    .   to hell with you; I'm going home."

**5.** Ky.Rev.Stat.Ann. § 189.231 (Baldwin) states:

(1) The Commissioner of Highways may restrict or regulate traffic and may install and maintain traffic control devices upon state-maintained highways in such manner as is reasonably necessary to promote the safety and convenience of the travelling public.

(2) The driver of any vehicle shall obey the instructions of any official traffic control device applicable thereto unless otherwise directed by traffic or police officer (sic), subject to the exception granted the driver of an authorized emergency vehicle.

prohibit mere speech, in violation of the First Amendment, because of the absence of any proof of physical contact between Sturgill and Scott. We find these contentions to be without merit, and otherwise think the defendant had a fair trial without reversible error.

Accordingly, the conviction for harassment is reversed and the convictions for failing to obey a stop sign and for disorderly conduct are affirmed.